1
2
3
4
5
6
7
8

9                          IN THE UNITED STATES DISTRICT COURT

10                       FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12   VISUAL CHANGES SKIN CARE                    CASE NO. CV F 08-0959 LJO DLB
     INTERNATIONAL, INC.
13                                               **ORDER ON DEFENDANT'S F.R.Civ.P. 12(b)(6)**
                          Plaintiff,             **AND F.R.Civ.P. 12(e) MOTIONS**
14   _____    (Doc. 20.)

15          vs.

16   NEWAYS, INC.,

17                          Defendant.
     _____/

18                                  <u>**INTRODUCTION**</u>

19          Defendant Neways, Inc. ("Neways") seeks to dismiss plaintiff Visual Changes Skin Care

20   International, Inc.'s ("Visual Changes'") federal trademark infringement and state unfair competition

21   claims in the absence of sufficient facts of likelihood of confusion from Neways' use of "Resurrection"

22   for its skin care products.  Neways further pursues an alternative motion for more definite statement in

23   that missing details of likelihood of confusion renders Visual Changes claims "unintelligible."  Visual

24   Changes responds that Neways relies on impermissible extrinsic evidence and that it has sufficiently

25   alleged likelihood of confusion, a factual question.  This Court considered Neways F.R.Civ.P. 12(b)(6)

26   and F.R.Civ.P. 12(e) motions on the record, and VACATES the October 30, 2008 hearing, pursuant to

27   Local Rule 78-230(h).  For the reasons discussed below, this Court DENIES Neways' alternative

28   F.R.Civ.P. 12(b)(6) and F.R.Civ.P. 12(e) motions.

                                                   1

1

## BACKGROUND[1]

2

## The Parties And Their Products

3    Visual Changes is a California corporation and a wholesale distributor of an anti-aging skin

4 moisturizing product under the trademark "Resurrection."  Since as early as Mary 2004, Visual Changes

5 adopted and has used continuously the mark Resurrection for its product.  Visual Changes labels is

6 product bottles with the Resurrection mark and has sold its Resurrection product in all 50 states and the

7 District of Columbia through distributors.  Visual Changes extensively advertises its product under the

8 Resurrection mark.  Visual Changes notes that the mark identifies its "product only, and distinguishes

9 it from such products manufactured and sold by others."  Visual Changes has a pending application for

10 federal registration of Resurrection.

11    Neways is a Utah corporation which markets and sells in the United States, without Visual

12 Changes' permission, a skin moisturizing product under the name "Resurrection Biomist" and/or

13 "Neways Resurrection Biomist."[2]  Neways uses Resurrection Biomist and/or Neways Resurrection

14 Biomist on its product labels and related advertisements and marketing.  Neways seeks federal

15 registration of Resurrection Biomist and Neways Resurrection Biomist.  Visual Changes opposes the

16 applications before the Trademark Trial and Appeal Board ("TTAB") and contends that Resurrection

17 Biomist and Neways Resurrection Biomist are not entitled to trademark protection and that Visual

18 Changes' "common law rights" in the Resurrection mark are superior to Neways' rights in that Visual

19 Changes used the Resurrection mark prior to Neways' first use of Resurrection Biomist and Neways

20 Resurrection Biomist.

21

## Visual Changes Claims

22    Visual Changes claims that Neways' use of Resurrection Biomist and Neways Resurrection

23 Biomist "is likely to cause confusion, mistake, or deception among consumers as to the source, quality,

24 and nature of Defendant Neways' goods."  The complaint alleges:

25

26    [1]    The factual recitation is derived generally from Visual Changes complaint, filed July 10, 2008

27 ("complaint"), the target of Neways' challenges.

28    [2]    Neways notes that Visual Changes' Resurrection product and Neways' Resurrection Biomist products contain extract from the Resurrection plant.

2

1.   A first cause of action that Neways' use of Resurrection Biomist and Neways Resurrection Biomist constitutes trademark infringement, false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); and

2.   A second cause of action that Neways' use of Resurrection Biomist and Neways Resurrection Biomist constitutes trademark infringement and unfair competition under California common law and constitutes unfair competition under California Business and Professions Code sections 17200, et seq.

The complaint seeks, among other things, injunctive relief, damages and Neways' profits.

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion Standards

Neways seeks F.R.Civ.P. 12(b)(6) dismissal in that the complaint fails to allege sufficient facts for "the indispensable element that the Neways Marks would create a likelihood of confusion." A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995). F.R.Civ.P. 12(b)(6) dismissal is proper when "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102 (1957).

In resolving a Rule 12(b)(6) motion, the court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in

the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 765, 767 (8th Cir. 2003) (citation omitted). A court need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). Nonetheless, a court may consider exhibits submitted with the complaint. *Van Winkle*, 290 F.Supp.2d at 1162, n. 2. A court may also consider "documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir. 1998) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)).

### F.R.Civ.P. 12(e) Motion For More Definite Statement Standards

Neways further pursues an alternative motion for a more definite statement pursuant to F.R.Civ.P. 12(e), which empowers a party to seek "a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." A F.R.Civ.P. 12(e) motion "attacks the unintelligibility of the complaint, not simply the mere lack of detail." *Neveu v. City of Fresno*, 392 F.Supp.2d 1159, 1169 (E.D. Cal. 2005)*; see Woods v. Reno Commodities, Inc.*, 600 F.Supp. 574, 580 (D. Nev. 1984); *Nelson v. Quimby Island Reclamation Dist.*, 491 F.Supp. 1364, 1385 (N.D. Cal. 1980). "A court will deny the motion where the complaint is specific enough to apprise the defendant of the substance of the claim being asserted." *Neveu*, 392 F.Supp.2d at 1169 (citing *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1461 (C.D.Cal.1996)). A F.R.Civ.P. 12(e) motion should be denied if the pleading provides a "short and plain statement" of the claim showing that the pleader is entitled to relief. *Virgen v. Mae*, 2007 WL 1521553, *2 (E.D. Cal. 2007) (citing F.R.Civ.P. 8(a)(2)). A F.R.Civ.P. 12(e) motion is proper only where the complaint is "so

1   vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or

2   without prejudice to himself." *Cellars v. Pacific Coast Packaging, Inc.*, 189 F.R.D. 575, 578

3   (N.D.Cal.1999) (internal quotations and citation omitted).

4      With the above standards in mind, this Court turns to Neways' challenges to the complaint.

5                               **Neways' Extrinsic Evidence**

6      Initially, Neways relies on its website information to note that it markets Resurrection Biomist

7   and Neways Resurrection Biomist through "different channels" than Visual Changes and "distinct

8   customer pools" in that Neways sells its products "only through a network of Independent Distributors

9   within a multi-level marketing system."  According to Neways, its products "are not available to the

10  general public in retail stores or online."  Neways argues that since its products are available only

11  through its independent distributors and Visual Changes products are sold through "conventional retail

12  channels,"[3] "a customer purchasing a Visual Changes Neways product would likely never encounter let

13  alone be confused into thinking he or she was purchasing a Neways product."

14     Visual Changes rightfully objects to Neways' reliance on its website information.  Such

15  information is extrinsic to Visual Changes' complaint, and this Court will consider neither it nor related

16  argument.  The complaint's Exhibit B, a specimen of the name Neways uses from its website, does not

17  open up Neways entire website for consideration on a F.R.Civ.P. 12(b)(6) motion.  Moreover, Neways'

18  reference to TTAB materials adds little to the parties' respective positions.  This Court is unconvinced

19  that the TTAB materials, using Neways' words, "highlight[s] the dearth of facts not recited in Visual

20  Changes' complaint."

21                               **Likelihood Of Confusion**

22     Visual Changes first cause of action is premised under 15 U.S.C. § 1125(a), which provides:

23        Any person who, on or in connection with any goods or services, or any container
          for goods, uses in commerce any **word, term, name**, symbol, or device, or any

24        combination thereof, or any false designation of origin, false or misleading description
          of fact, or false or misleading representation of fact, which--

25

26        (A) is **likely to cause confusion**, or to cause mistake, or to deceive as to the
          affiliation, connection, or association of such person with another person, or as to the

27  _____

28     [3]     Neways notes that Visual Changes markets to wholesale distributors who place Visual Changes products
    in retail outlets.

                                        5

origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

     (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

"A trademark's function is to identify and distinguish the goods or services of one seller from another." *General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist,* 887 F.2d 228, 231 (9th Cir. 1989), *cert. denied*, 493 U.S. 1079, 110 S.Ct. 1134 (1990). "The core element of trademark infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source of the products." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1045 (9th Cir. 1999). "[U]nder the Lanham Act, 15 U.S.C. § 1125(a), the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks. *New West Corp. v. NYM Co. of California, Inc.,* 595 F.2d 1194, 1201 (9th Cir. 1979). "Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical is there a 'likelihood of confusion?'" *New West*, 595 F.2d at 1201. A "plaintiff is not required to prove the likelihood of confusion at the pleading stage." *McDonald's Corp. v. Gunvill*, 441 F.Supp.71, 73 (N.D. Ill. 1977), *aff'd*, 622 F.2d 592 (7th Cir. 1980).

The "Lanham Act seeks to prevent consumer confusion that enables a seller to pass off his goods as the goods of another. . . . [T]rademark infringement protects only against mistaken purchasing decisions and not against confusion generally." *Lang v. Ret. Living Publ'g Co., Inc.*, 949 F.2d 576, 582-83 (2nd Cir.1991) (internal quotation marks and citation omitted).

To state a claim of trademark infringement under California common law, a plaintiff need allege only (1) its prior use of the trademark and (2) the likelihood of the infringing mark being confused with plaintiff's mark. *American Petrofina v. Petrofina of California, Inc.*, 596 F.2d 896, 897 (9th Cir.1979); *Wood v. Apodaca,* 375 F.Supp.2d 942, 947-948 (N.D.Cal. 2005).

Neways faults the complaint's "minimal and limited facts" which fail to demonstrate likelihood of confusion given that Resurrection Biomist and Neways Resurrection Biomist "are merely descriptive and/or generic" and there is no overlap of Visual Changes and Neways' customer bases, an issue which

Neways attributes the complaint to hide.  Neways criticizes the complaint for merely alleging "a likelihood of confusion as to the 'public' generally and not to customers and potential customers of the products in question."  *See Moose Creek, Inc. v. Ambercrombie & Fitch*, 331 F.Supp.2d 1214, 1229-1230 (C.D. Cal. 2004), *aff'd*, 114 Fed.Appx. 921 (9th Cir. 2004) (absence of finding parties' products "for sale in the same store" weighs against confusion).  Neways seeks to require Visual Changes to "specify how customers and/or potential customers are likely to be confused, particularly when there is a limited market for a particular product" and the parties respective products "are not equally accessible to the consuming public."

The thrust of Neways' initial attack is that Visual Changes is unable to plead facts of likelihood of confusion because Visual Changes' products are sold at retail and Neways' products are not sold at retail.  Thus, according to Neways, respective customer pools would not overlap and become potentially confused.

Visual Changes responds that the complaint adequately alleges likelihood of confusion and points to the complaint's specific allegations that:

1.  "Neways, with notice of Plaintiff's ownership of the trade mark RESURRECTION, markets and sells a skin moisturizing product under the name "Resurrection Biomist" and/or the name "Neways Resurrection Biomist" . . . within the United States without the permission of Plaintiff";

2.  "Plaintiff's common law rights in the RESURRECTION mark are superior to Defendant's rights, if any, in the names "Resurrection Biomist" and/or "Neways Resurrection Biomist," for at least the reason that Plaintiff first made a trademark use of the RESURRECTION mark prior to the first use by Defendant Neways of the term "Resurrection Biomist" and/or "Neways Resurrection Biomist" and Plaintiff has used the mark RESURRECTION continuously since that first trademark use"; and

3.  "Neways' designation "Resurrection Biomist" and/or "Neways Resurrection Biomist," are colorable imitations of Plaintiff's RESURRECTION mark.  Defendant Neways uses the name "Resurrection Biomist" and/or "Neways Resurrection Biomist" in interstate commerce in connection with the sale, offering for sale, distribution, and advertising of

7

1    a skin moisturizer product.  As such, Defendant Neways' use of the name "Resurrection

2    Biomist" and/or "Neways Resurrection Biomist," is likely to cause confusion, mistake,

3    or deception among consumers as to the source, quality, and nature of Defendant

4    Neways' goods."

5    Visual Changes further notes that "the channels of trade are not conclusive of the likelihood of confusion

6    analysis" and that Neways' assertions of "fact" should be ignored.

7    The Ninth Circuit Court of Appeals employs an eight-factor test ("*Sleekcraft*" factors) to

8    determine likelihood of confusion.  *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008);

9    *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1053-1054 (9th Cir. 1999).  The

10   factors include:

11   1.    The mark's strength;

12   2.    The goods' proximity;

13   3.    The marks' similarity;

14   4.    Evidence of actual confusion;

15   5.    **Marketing channels used**;

16   6.    Type of goods and degree of care likely to be exercised by purchaser;

17   7.    Defendant's intent to select the mark; and

18   8.    Likelihood of expansion of product lines.

19   *Jada Toys*, 518 F.3d at 632 (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348, 349 (9th Cir. 1979)).

20   The likelihood of confusion test is "pliant" and "[s]ome factors are much more important than

21   others."  *Brookfield*, 174 F.3d at 1054.  The Ninth Circuit has "never countenanced a likelihood of

22   confusion determination based on a consideration of dissimilarity alone or, indeed, on the consideration

23   of any single factor."  *Jada Toys*, 518 F.3d at 632.  The Ninth Circuit regularly applies "all relevant

24   factors, noting that a final likelihood of confusion determination may rest on those factors that are of the

25   most relative importance in any particular case."  *Jada Toys*, 518 F.3d at 632-633.

26   Visual Changes is correct that the absence of trade channels allegations is not fatal to its claims.

27   Neways' attack is based on a factual determination not at issue at this pleading stage.  Neways appears

28   to agree in that it notes that the *Sleekcraft* factors are "necessary to determine the likelihood of

confusion" and that "weighing evidence is inappropriate in a motion to dismiss." Neways oversteps a F.R.Civ.P. 12(b)(6) challenge by seeking consideration of improper extrinsic evidence as to but one factor to address likelihood of confusion. The complaint adequately alleges likelihood of confusion to defeat Neways' challenges at this pleading stage.

### Use of Resurrection

Neways supports its use of the term Resurrection as "merely descriptive of the contents of Neways' product" in that its product contains "extract of the Resurrection plant." Neways points to the complaint's allegation that Neways is unable to obtain trademark rights in Resurrection Biomist and Neways Resurrection Biomist "as the product so labeled contains extract from the resurrection plant and is applied by 'misting' the product onto the user's skin and thus are generic and/or merely descriptive terms not entitled to trademark protection." Neways contends that Visual Changes' assertion that Neways' marks includes generic or descriptive use of Resurrection pleads Visual Changes "out of its claims."

"[A]lthough trademark rights may be acquired in a word or image with descriptive qualities, the acquisition of such rights will not prevent others from using the word or image in good faith in its descriptive sense, and not as a trademark." *Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 269 (2nd Cir. 1995). "The principle is of great importance because it protects the right of society at large to use words or images in their primary descriptive sense, as against the claims of a trademark owner to exclusivity." *Car-Freshner*, 70 F.3d at 269. "What matters is whether the *defendant* is using the protected word or image descriptively, and not as a mark." *Car-Freshner*, 70 F.3d at 269. The "public's right to use descriptive words or images in good faith in their ordinary descriptive sense must prevail over the exclusivity claims of the trademark owner." *Car-Freshner*, 70 F.3d at 269.

Visual Changes attributes Neways to assert a "fair use" defense which Visual Changes contends "is not a complete defense because it may be defeated by likelihood of confusion." Visual Changes argues that the complaint's fair use allegations are limited to: (1) Neways' use of resurrection is generic and/or "merely descriptive" to avoid trademark protection; and (2) Neways' attempt to seek federal registration of "Resurrection Biomist" and "Neways Resurrection Biomist." Neways responds that "evaluation of a fair use defense is inappropriate as Visual Changes has failed to even set forth in its

1  complaint sufficient facts to support a cognizable legal theory."

2      To establish "a classic fair use defense," a defendant must prove that defendant's use of the term:

3  (1) is not as a trademark or service mark; (2) is fair and in good faith; and (3) only describes defendant's

4  goods or services. *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002).  The Ninth Circuit

5  prohibits use of the classic fair use defense "if there is a likelihood of customer confusion as to the origin

6  of the product." *Cairns*, 292 F.3d at 1151.  "The classic fair use analysis, therefore, only *complements*

7  the likelihood of customer confusion analysis set forth in *Sleekcraft*." *Cairns*, 292 F.3d at 1151

8  (emphasis in original).  The fact that "fair use can occur along with some degree of confusion does not

9  foreclose the relevance of the extent of any likely consumer confusion in assessing whether a defendant's

10  use is objectively fair." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 123,

11  125 S.Ct. 542 (2004).

12      Factors to determine fair use include:

13      1.      Degree of likelihood of confusion;

14      2.      Trademark's strength;

15      3.      Descriptive nature of the term for the product or service offered by the competitor and

16              availability of alternate descriptive terms;

17      4.      Extent of use of the term prior to trademark registration; and

18      5.      Differences among times and contexts in which the competitor used the term.

19  *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 609 (9th Cir. 2005).

20      At this pleading stage, this Court is not in position to conclude that Neways uses Resurrection

21  as merely descriptive and that Visual Changes contemplates as much.  The complaint's overall import

22  is that Neways uses Resurrection as a mark, not descriptively.  The complaint does not suggest that

23  Neways uses Resurrection fairly and in good faith merely to describe its goods.  The complaint

24  satisfactorily pleads a likelihood of confusion to avoid Neways' descriptive use arguments and the fair

25  use defense.  Of course, this Court's ruling is limited to the complaint's four corners and not evidence

26  which may develop during discovery.

27      **State Unfair Competition Claims**

28      Neways argues that "as go" Visual Changes' federal claim, "so goes" its state law unfair

10

1   competition claim in that the claims are "essentially identical."  Visual Changes acknowledges that "the

2   likelihood of confusion" issue is same for the federal and state claims.

3          "[S]tate common law claims of unfair competition and actions pursuant to California Business

4   and Professions Code § 17200 are 'substantially congruent' to claims under the Lanham Act."  *Cleary*

5   *v. News Corp.*, 30 F.3d 1255, 1262-1263 (9th Cir. 1994).  The "ultimate test" for both Lanham Act and

6   California statutory claims is "whether the public is likely to be deceived or confused by the similarity

7   of the marks."  *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988).  "The test

8   for false designation under the Lanham Act, as well as the common-law and statutory unfair competition

9   claims, is whether there was a 'likelihood of confusion.'"  *Walter v. Mattel, Inc.*, 210 F.3d 1108, 1111

10  (9th Cir. 2000.)  Federal, common law and state statutory unfair competition claims are treated

11  "coextensive" in that they "turn on the sufficiency of proof of likelihood of confusion."  *Walter*, 210 F.3d

12  at 1110, n. 1.

13         As noted above, the complaint sufficiently pleads likelihood of confusion to permit its federal

14  claim and in turn state law claim to proceed.

15                                        **CONCLUSION AND ORDER**

16         For the reasons discussed above, this Court DENIES Neways' alternative F.R.Civ.P. 12(b)(6)

17  and F.R.Civ.P. 12(e) motions and ORDERS Neways, no later than November 10, 2008, to file an answer

18  to the complaint.

19         IT IS SO ORDERED.

20  **Dated:    October 24, 2008               /s/ Lawrence J. O'Neill**
                                              UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28

                                                    11